UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CECIL LAMAR HALL, ) <br> ) <br>     Petitioner, ) <br> ) <br> vs. ) <br> ) <br> DIRECTOR, DEPT. OF ) <br> CORRECTIONS, *et al.*, ) <br> ) <br>     Respondents. ) <br> _____/ | 2:08-CV-01825-GMN-GWF <br><br> **ORDER** |

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Cecil Lamar Hall, a Nevada prisoner. On November 24, 2015, respondents filed a motion to dismiss certain claims in Hall's second amended petition, arguing that they are untimely and/or procedurally defaulted. They also argue that Hall waived any pre-plea constitutional defects by virtue of his guilty plea. ECF No. 54. Hall has filed his opposition to the motion and his own motion asking the court for an evidentiary hearing in support of that opposition. ECF Nos. 57, 60, and 62. This order decides both motions.

## I.  PROCEDURAL BACKGROUND[1]

On January 26, 2006, Hall entered a guilty plea to one count of lewdness with a minor under the age of 14.  Pursuant to pre-plea negotiations, the parties agreed to a stipulated sentence of ten years to life, with the State retaining the right to argue at the time of sentencing.  Hall acknowledged that he would be subject to lifetime supervision and that he would be required to register as a sex offender if released from custody.

On February 8, 2006, Hall's court-appointed counsel filed a motion to withdraw guilty plea based on a letter in which Hall claimed that "voices in his head" told him to "take the deal."  Based on the competency evaluations of two court-appointed mental health experts, the state district court concluded that Hall was competent when he entered his plea and signed the guilty plea agreement and denied Hall's motion.

On June 8, 2006, Hall was sentenced to a term of life in prison with the possibility of parole after 10 years in accordance with the guilty plea agreement and the plea negotiations.  The court entered its judgment of conviction on June 20, 2006.  Hall appealed.

The Nevada Supreme Court denied Hall's appeal on May 9, 2007, with the remittitur issuing on June 5, 2007.  On March 5, 2008, Hall filed a petition for writ of habeas corpus in the state district court.  The petition was denied by the district court on May 21, 2008.  Hall appealed.  The Nevada Supreme Court affirmed the lower court's decision on November 14, 2008 with a clerk's certificate issuing in lieu of remittitur on December 11, 2008.

On December 24, 2008, Hall filed the federal petition for writ of habeas corpus that initiated this proceeding.  On May 27, 2009, the Federal Public Defender (FPD) appeared on behalf of Hall and, on February 22, 2010, filed an amended petition.  On July 1, 2011, the State filed its motion to dismiss for lack of exhaustion.  On August 15, 2011, Hall filed his opposition to the motion to

---

[1]  This procedural background is derived from the exhibits filed under ECF Nos. 20, 21, 34, 42, and 43 and this court's own docket.

dismiss and his own motion for a stay of the proceedings so he could return to state court and exhaust his unexhausted claims.

On January 1, 2012, this court granted the motion for a stay. On August 10, 2011, Hall filed his second post-conviction petition for writ of habeas corpus in the state district court. On January 18, 2013, the state court filed its findings of fact and conclusions of law denying the second post-conviction writ of habeas corpus. Hall appealed.

On October 15, 2014, the Nevada Supreme Court entered its order affirming the state district court's denial of the petition. The court found his petition was procedurally barred by Nev. Rev. Stat. §§ 34.726(1) (timeliness) and 34.810(2) (successiveness).

This case was re-opened on February 5, 2015. Hall filed his second amended petition on May 6, 2015.

## II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *Id.* Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2).

Respondents concede that Hall filed his initial petition herein within the one-year filing period under § 2244(d)(1). Respondents argue, however, that Hall's first and second amended petitions were filed after the one-year period had elapsed. They further argue that Grounds One, Two(c), Three, and Five in his second amended petition are time-barred from federal court review because those claims do not "relate back" to the initial petition.

3

Hall does not dispute that his amended petitions were filed beyond the one-year AEDPA deadline, but he argues that the claims at issue do, in fact, relate back. Alternatively, he argues that, due to circumstances discussed below, he is entitled to equitable tolling of the statute of limitations.

1. *Relation back*

The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). In *Mayle*, the Court held that the Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2) (now Rule 15(c)(1)(B)),[2] which allowed an amendment to a habeas petition to "relate back" to the date of the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," was too broad. *Id*. at 656-57. The Court held that an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Id*. at 663-64. The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief. *Id*. at 661.

**Ground One**: In Ground One, Hall claims his guilty plea was in violation of his constitutional right to due process because it was not entered knowingly, intelligently, or voluntarily. In support of this claim, he sets forth detailed factual allegations regarding his mental and physical impairments (including the effects of medication), the trial court's canvass, and being coerced by his attorney. Grounds One and Two of Hall's initial petition challenge the validity of his guilty plea and the effectiveness of his plea counsel, respectively. The operative facts underlying both claims are Hall's alleged lack of competency due to the effects of mental impairments and psychotropic

---

[2] Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

medication with a few references to the trial court's failure to advise him of certain consequences of the guilty plea.

The allegations in Ground One of his second amended petition regarding his mental and physical impairments (including the effects of medication) are far more factually-developed than the grounds in his initial petition. In addition, the allegations regarding the trial court's canvass and attorney coercion are, for the most part, entirely absent from the initial petition. Even so, this court views Hall's alleged inability to understand the nature of his plea and consequences of his plea agreement due to mental impairments and psychotropic medication as a core of operative facts that is shared by claims in Hall's initial petition and his second amended petition. Ground One relates back for the purposes of Rule 15(c)(1)(B).

**Ground Two(c)**: In Ground Two(c), Hall alleges he was deprived of effective assistance of counsel in violation of his constitutional rights because his counsel failed to obtain additional psychiatric and neuropsychological evaluations prior to the entry of his guilty plea. This claim does not share a common core of operative facts with a claim in Hall's initial federal petition. Accordingly, it does not relate back for the purposes of Rule 15(c)(1)(B).

**Ground Three**: In Ground Three, Hall alleges that he was denied his constitutional right to due process when he was not informed that the offense to which he pled was not probationable. In support of this claim he complains that neither his guilty plea agreement nor the trial court's plea canvass advised him of this fact.

In Ground One of his initial petition, Hall included an allegation that the trial judge "failed to advise him that the matter was nonprobationable." ECF No. 1, p, 3. That allegation did not constitute, however, the core of Hall's claim in Ground One of the initial petition, which focused instead on his inability to understand the nature of his plea and consequences of his plea agreement.

Hall's initial petition does not contain a claim based on his alleged lack of notice that the offense to which he pled was not probationable or, more broadly, on the adequacy of the plea

5

agreement and/or the trial court's plea canvass.  Thus, like Ground Two(c), Ground Three of his second amended petition does not share a common core of operative facts with any claims in Hall's initial federal petition and, therefore, does not relate back for the purposes of Rule 15(c)(1)(B).

**Ground Five**: In Ground Five, Hall alleges that his constitutional rights to due process and effective assistance counsel were violated because the trial court failed to appoint conflict counsel to represent him for the proceedings on his motions to withdraw his guilty plea and to dismiss counsel. This claim does not share a common core of operative facts with a claim in Hall's initial federal petition.  Thus, it too does not relate back for the purposes of Rule 15(c)(1)(B).

        2. *Equitable tolling*

The Supreme Court has held that, in appropriate cases, equitable tolling is applicable to the statute of limitations imposed by § 2244(d). *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). Under *Holland*, a habeas petitioner is entitled to equitable tolling only if he can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted).  The application of equitable tolling is "highly fact-dependent." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).; *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000); *see also Holland*, 130 S.Ct. at 2565 ("often fact-intensive").  "[T]he threshold necessary to trigger equitable tolling ... is very high, lest the exceptions swallow the rule." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002), and *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

Hall argues that he is entitled to equitable tolling from August 8, 2007 (the date his conviction became final), until May 27, 2009 (the date the FPD appeared herein), due to two factors

1 that each, or in tandem, made it impossible for him to timely file all of his claims.[3] According to
2 Hall, one factor is that "he is incompetent and incapable of understanding the need for filing a
3 petition and of pleading claims for relief." ECF No. 57, p. 24. The other is that the Nevada
4 Department of Corrections (NDOC) "failed to control a renegade inmate, Mr. Wiideman, who took
5 advantage of Mr. Hall's low IQ and mental illness and controlled his state and federal habeas
6 proceedings." *Id*., p. 24-25.

7    A petitioner is entitled to equitable tolling on the basis of mental impairment when: (1) his
8 mental impairment was "so severe" that he was either unable to "understand the need to timely file"
9 or unable to "personally prepare a habeas petition and effectuate its filing" and (2) he was diligent in
10 "pursuing the claims to the extent he could understand them, but that [his] mental impairment made
11 it impossible to meet the filing deadline under the totality of the circumstances, including reasonably
12 available access to assistance." *Bills v. Clark*, 628 F.3d 1092, 1100 (9th Cir. 2010).

13    To support his claim that he meets the first prong of the *Bills* test, Hall proffers a report
14 prepared by a psychologist, David L. Schmidt, Ph.D., who evaluated Hall in November of 2009.
15 ECF No. 21-27. Dr. Schmidt noted Hall's lengthy history of mental illness, primarily schizophrenia,
16 for which he began receiving disability benefits in his late teens or early twenties. He also
17 determined that Hall's IQ borders on intellectually disabled, with a full scale IQ score of 70. He
18 assessed Hall's reading ability at the 5th grade reading level and described him as "functionally
19 illiterate" with "the intelligence and problem solving ability of the average eight to nine year old."
20 *Id.*, p. 6-7. In addition, he diagnosed Hall with cognitive disorder (frontal lobe impairment), which
21 he attributed to a traumatic brain injury consisting of Hall being stabbed in the head with an ice pick
22 and beaten unconscious when he was 18 years old.

---

[3] With the statute of limitations tolled until May 27, 2009, Hall's first amended petition would be timely. As Hall points out, and respondents do not dispute, the claims in the second amended petition are "materially indistinguishable" from those in the first amended petition. ECF No. 57, p. 26.

In response, respondents argue that mental health experts found Hall competent prior to the entry of his guilty plea and, subsequently, in relation to his motion to withdraw his guilty plea. As discussed below, however, the competence standards employed in those evaluations differ from those outlined in *Bills*. Dr. Schmidt's report is not significantly inconsistent with the reports of those experts (Gregory P. Brown, M.D., (ECF Nos. 21-22, 21-23) and Marv A. Glovinsky, Ph.D. (ECF No. 21-24)) with respect to the nature and severity of Hall's impairments. Dr. Brown's reports confirm Hall's long-standing diagnoses of schizophrenia. Dr. Glovinsky estimated that Hall possessed "low average intellectual competence" and noted that "[h]is thinking was confounded by cognitive blocking." However, because it contains a detailed assessment of Hall's level of intelligence and literacy, Dr. Schmidt's report is more informative on the specific issue presented here.

All of the reports taken together establish that Hall was (and still is) unable to *personally* prepare a habeas petition and effectuate its filing.[4] Hall's severe mental impairments and borderline intellectual functioning, combined with his lack of literacy, make it inconceivable that he would be able to complete this task. This determination does not necessarily bear upon whether Hall was competent to stand trial or enter a plea. As explained by the court in *Bills*, standards of competency for other aspects of the criminal process do not "precisely apply here," but are instructive in the sense that they "ask whether the defendant or petitioner is mentally competent to do what the law requires." *Bills*, 628 F.3d at 1099-1100. Thus, at the time he entered his plea, Hall may have had the ability to consult with his lawyer with a reasonable degree of rational understanding and possessed a rational as well as factual understanding of the proceedings against him (*Dusky v. United States*, 362

---

[4] The *Bills* court was careful to point out that two components of the first prong of the test are disjunctive – i.e., "a petitioner would be entitled to equitable tolling if he could show either of those conditions were met: *either* he did not understand his need to timely file *or* his mental impairment made him unable to take steps to effectuate that filing. *Bills*, 628 F.3d at 1100 n.2. (emphasis in original).

U.S. 402 (1960), but that does not foreclose a finding that he is personally unable to prepare and file a federal habeas petition.

The second prong of the *Bills* test is a "'totality of the circumstances'" test, which "considers whether the petitioner's impairment was a but-for cause of any delay." *Bills*, 628 F.3d at 1100. This court must "consider whether the circumstances demonstrated the petitioner was otherwise diligent in attempting to comply with the filing requirements, which means that "the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available." *Id*. at 1101. Here, Hall enlisted the assistance of fellow-prisoners to litigate his first state post-conviction proceedings on his behalf and to file his initial federal petition and subsequent motion for appointment of counsel. He sent letters to this court in January and April 2009 inquiring about the status of his case. ECF Nos. 2 and 6.

A demonstration of diligence alone, however, is not sufficient to meet the second prong of the *Bills* test. The dispositive question is whether the mental impairment was the but-for cause of the untimely filing. *Stancle v. Clay*, 692 F.3d 948, 959 (9th Cir. 2012). The problem for Hall is that his initial federal petition was timely filed. It was only his amended claims that were filed beyond the AEDPA deadline. The cause of that untimeliness was the omission of claims from Hall's initial pleading, which cannot be attributed directly to Hall's mental impairments.

Instead, it must be attributed to the inmate law clerk who drafted the petition. Hall's reliance on the assistance of another inmate is not extraordinary because this is a routine circumstance faced by many inmates. *See Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir.2010) (per curiam). Also, the quality of the petition filed by a inmate law clerk is not a factor Hall can rely upon to establish equitable tolling. *See Marsh v. Soares*, 223 F.3d 1217, 1220–21 (10th Cir. 2000) (holding that incompetence of an inmate law clerk did not create "extraordinary circumstances" warranting equitable tolling).

This court also rejects the argument that the NDOC's alleged "failure to control" the inmate who drafted Hall's petition is contributing "extraordinary circumstance" that must be considered in determining whether Hall is entitled to equitable tolling. Hall provides extensive documentation of inmate Wiideman's history of unethical conduct and the State's efforts to discipline him, both administratively and criminally. ECF Nos. 43 and 60. Even so, the NDOC has no obligation to govern the quality of legal assistance provided by inmates. In a case where an inmate represented to a fellow inmate that he was a lawyer and a former law clerk to a United States District Judge, but subsequently created a bogus file stamp to hide his failure to timely file the fellow inmate's habeas petition, the federal district court explained as follows:

> It is common for prisoners to count on other inmates for assistance in filing lawsuits or seeking habeas relief. . . . Inmates who assist other prisoners with legal matters are not subject to the ethical and fiduciary obligations of lawyers. If their miscreant, inept, or negligent conduct were deemed sufficient of itself to toll the AEDPA limitations period, the time-bar would be rendered virtually meaningless.

*Henderson v. Johnson*, 1 F. Supp. 2d 650, 655 (N.D. Tex. 1998).

Thus, this court concludes that, while Hall lacked the ability to personally prepare and file his federal habeas petition, his mental impairments did not cause the untimely filing of Grounds Two(c), Three, and Five. Accordingly, Hall is not entitled to equitable tolling. And, because those grounds do not relate back to Hall's initial petition, they are time-barred.

### III. PROCEDURAL DEFAULT

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the United States Supreme Court held that a state prisoner's failure to comply with the state's procedural requirements in presenting his claims to the state court is barred from obtaining a writ of habeas corpus in federal court if the procedural bar imposed by the state court was independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729. Where such a procedural default constitutes an adequate and independent state ground for the denial of habeas corpus relief, the default may be excused only "if a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if

the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Respondents argue that this court is barred by the doctrine of procedural default from considering Grounds One, Two, Three, and Five. They contend that, by finding those claims defaulted pursuant to Nev. Rev. Stat. §§ 34.726 and 34.810, the Nevada Supreme Court applied adequate and independent procedural rules to dismiss the claims. Respondents also note that the Nevada Supreme Court rejected Hall's attempts to demonstrate cause and prejudice to overcome those procedural bars.

Hall does not dispute that the Nevada Supreme Court applied adequate and independent procedural rules to bar the claims presented in his *second* post-conviction proceeding. He argues, however, that this court is nonetheless permitted to consider Grounds One, Two, and Three because he also presented them in either his direct appeal or in his first state post-conviction proceeding. Hall is correct – Grounds One and Three were presented in his direct appeal (ECF Nos. 21-4 and 21-7) and Ground Two was presented in his first state post-conviction proceeding (ECF Nos. 21-19 and 21-20). Thus, those claims are not procedurally defaulted for the purposes of federal court review. *See Cone v. Bell*, 556 U.S. 449, 467 (2009) ("A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration – not when the claim has been presented more than once.").

Hall also argues that he can demonstrate cause and prejudice to overcome the default of any of his claims. Because his only procedurally-defaulted claim, Claim Five, is also time-barred, the court declines to address this argument.

IV. PRE-PLEA CONSTITUTIONAL ERRORS

Respondents argue that Grounds Two(a) and Two(c) should be dismissed because he relinquished his right to raise such challenges when he entered his guilty plea. Respondents rely upon *Tollett v. Henderson*, 411 U.S. 258 (1973), in which the Court held a guilty plea "forecloses

independent inquiry" into "claimed antecedent constitutional violations." *Tollett*, 411 U.S. at 266. Because Grounds Two(a) and Two(c) challenge the validity of the plea itself, not antecedent constitutional violations, respondents' *Tollett* argument is without merit.

## V.  MOTION FOR EVIDENTIARY HEARING

Hall requests an evidentiary hearing to present evidence in support of his argument that he is entitled to equitable tolling and that he can show cause and prejudice to overcome his procedural defaults. Here, the court has determined that Hall's mental impairments satisfy the first prong of the *Bills* test but that they were not the cause of his untimeliness. Similarly, this court has determined that inmate Wiideman's conduct and the NDOC's lack of control over him cannot, as a legal matter, serve as a ground for equitable tolling. Thus, an evidentiary hearing on those issues will serve no purpose. *See Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010) (holding that where the record is amply developed and indicates that the petitioner's mental incompetence did not cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearing).

As noted above, the only claim for which a cause and prejudice showing would assist Hall is also time-barred. Accordingly, the court also declines to hold an evidentiary hearing on that issue.

**IT THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 54) is GRANTED in part and DENIED in part. Grounds Two(c), Three, and Five are dismissed as time-barred.

**IT IS FURTHER ORDERED** that petitioner's motion for an evidentiary hearing (ECF No. 62) is DENIED.

**IT IS FURTHER ORDERED** that petitioner's unopposed motion to seal (ECF No. 59) is GRANTED.

**IT IS FURTHER ORDERED** that all pending motions for extension of time and leave to file excess pages (ECF Nos. 61, 66-69, and 73) are GRANTED *nunc pro tunc* as of their respective filing dates.

**IT IS FURTHER ORDERED** that respondents shall have **sixty (60) days** from the date this order is entered in which to file an answer to petitioner's remaining grounds for relief.

**IT IS FURTHER ORDERED** that petitioner shall have **forty-five (45) days** following service of respondents' answer in which to file a reply.

Dated this \_\_\_20\_\_\_ day of September, 2016.

_____
UNITED STATES DISTRICT JUDGE