UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CECIL LAMAR HALL,<br><br>       Petitioner,<br><br> v.<br><br>DIRECTOR, DEPT. OF CORRECTIONS,<br><br>       Respondent. | Case No. 2:08-cv-01825-GMN-GWF<br><br>ORDER |

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Cecil Lamar Hall, a Nevada Prisoner. ECF No. 47.

I. BACKGROUND[1]

On January 26, 2006, Hall entered a guilty plea to one count of lewdness with a minor under the age of 14. Pursuant to pre-plea negotiations, the parties agreed to a stipulated sentence of ten years to life, with the State retaining the right to argue at the time of sentencing. The guilty plea agreement provided that Hall would be subject to lifetime supervision and that he would be required to register as a sex offender if released from custody.

On February 8, 2006, Hall's court-appointed counsel filed a motion to withdraw guilty plea based on a letter in which Hall claimed that "voices in his head" told him to "take the deal" and that he had been pressured into the agreement. Based on the

---

[1] This procedural background is derived from the exhibits filed under ECF Nos. 20, 21, 34, 42, and 43 and this court's own docket.

competency evaluations of two court-appointed mental health experts, the state district court concluded that Hall had failed to establish incompetence. The court also found no evidence and coercion or duress. Accordingly, the motion was denied.

On June 8, 2006, Hall was sentenced to a term of life in prison with the possibility of parole after 10 years in accordance with the guilty plea agreement and the plea negotiations. The court entered its judgment of conviction on June 20, 2006. Hall appealed.

The Nevada Supreme Court denied Hall's appeal on May 9, 2007, with the remittitur issuing on June 5, 2007. On March 5, 2008, Hall filed a petition for writ of habeas corpus in the state district court. The petition was denied by the district court on May 21, 2008. Hall appealed. The Nevada Supreme Court affirmed the lower court's decision on November 14, 2008 with a clerk's certificate issuing in lieu of remittitur on December 11, 2008.

On December 24, 2008, Hall filed the federal petition for writ of habeas corpus that initiated this proceeding. On May 27, 2009, the Federal Public Defender (FPD) appeared on behalf of Hall and, on February 22, 2010, filed an amended petition. On July 1, 2011, the State filed its motion to dismiss for lack of exhaustion. On August 15, 2011, Hall filed his opposition to the motion to dismiss and motion to stay this proceeding so he could return to state court and exhaust his unexhausted claims.

On January 1, 2012, this court granted the motion for a stay. On August 10, 2011, Hall filed his second post-conviction petition for writ of habeas corpus in the state district court. On January 18, 2013, the state court filed its findings of fact and conclusions of law denying the second post-conviction writ of habeas corpus. Hall appealed.

On October 15, 2014, the Nevada Supreme Court entered its order affirming the state district court's denial of the petition. The court found his petition was procedurally barred by Nev. Rev. Stat. §§ 34.726(1) (timeliness) and 34.810(2) (successiveness).

This case was re-opened on February 5, 2015. Hall filed his second amended petition on May 6, 2015. Respondents filed a motion to dismiss certain claims in the petition, which the court granted in part, dismissing Grounds Two(c), Three, and Five as time-barred. The remaining claims have been fully-briefed and are before the court for a decision on the merits.

II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-

3

court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

III. DISCUSSION

**Ground One**

In Ground One, Hall claims that his conviction and sentence are unconstitutional under the Fifth and Fourteenth Amendments because his guilty plea was not entered knowingly, intentionally, or voluntarily. In support of this claim, he alleges that his low

4

1  intellectual functioning, his cognitive impairments, his psychiatric illness, and his
2  physical limitations made it impossible for him understand, and voluntarily enter into, the
3  guilty plea agreement. He also alleges that he did not understand the consequences of
4  his guilty plea. In addition, he contends that his attorney coerced him into entering the
5  guilty plea.

6  Under federal law, to be valid, a guilty plea must be knowing, voluntary, and
7  intelligent. *U.S. v. Brady*, 397 U.S. 742, 748 (1970). A guilty plea must represent "a
8  voluntary and intelligent choice among alternative courses of action open to the
9  defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoted source omitted). Advice for
10 a guilty plea does not require a description of every element of the offense. *Bargas v.
11 Burns*, 179 F.3d 1207, 1216 (9th Cir.1999) (citation omitted). The court looks to what a
12 defendant reasonably understood at the time of the plea. *U.S. v. Quan*, 789 F.2d 711,
13 713 (9th Cir.1986). The record must demonstrate that the defendant understands that he
14 is waiving his privilege against self-incrimination, his right to a jury trial, and his right to
15 confront accusers. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). "Solemn declarations
16 in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63,
17 73–74 (1977); *see also United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir.1993)
18 (defendant's statements, made in open court at time of his plea, are entitled to great
19 weight).

20 The guilty plea agreement Hall signed on January 26, 2006, described the
21 consequences of entering a guilty plea, including a mandatory sentence of life with
22 possibility of parole after a minimum of ten years and lifetime supervision as a sex
23 offender. ECF No. 20-13, p. 2-4. The agreement also notified Hall of the rights and
24 privileges he was waiving by entering a plea of guilty, including his privilege against self-
25 incrimination, his right to a jury trial, and his right to confront accusers. *Id.*, p. 4-5.
26 Finally, the agreement also confirmed that Hall was signing the agreement voluntarily
27 after consulting with his attorney. *Id.*, p. 5-6.

28

5

At his plea canvass that same day, Hall confirmed in open court that he had committed the acts supporting the charge of lewdness with a child under the age of 14. ECF No. 20-12, p. 4. He also confirmed the he was entering a guilty plea "freely and voluntarily." *Id.*, p. 4-5.

Prior to entering his guilty plea, Hall was examined by Dr. Gregory Brown, M.D., at defense counsel's request, to determine whether Hall was competent to stand trial. ECF No. 21-22. Dr. Brown examined Hall again as one of the experts appointed by the state district court in relation to his motion to withdraw his guilty plea. ECF No. 21-23. Marvin Glovinsky, Ph.D., also examined Hall as the other expert appointed by the court. ECF No. 21-24. In denying Hall's motion, the court found "that there is no showing of incompetency based on the competent psychological evaluations of Dr. Greg Brown and Dr. Marv Glovinsky, that there is no showing of coercion or duress based on the Guilty Plea Agreement signed by Defendant, and that Defendant's claims are belied by the record." ECF No. 20-21.

On appeal, the Nevada Supreme Court addressed the validity of Halls plea as follows:

> Hall contends that the district court erred by denying his presentence motion to withdraw his guilty plea. Specifically, Hall contends that his guilty plea was not voluntarily or knowingly entered because he was (1) "hearing voices" and incompetent at the time he entered his plea, and (2) not advised that the offense to which he pleaded was non-probationable. Hall also claims that the State could not demonstrate that it was prejudiced by his filing a motion to withdraw the plea. We disagree with Hall's contention.
>
> "A district court may, in its discretion, grant a defendant's [presentence] motion to withdraw a guilty plea for any 'substantial reason' if it is fair and just.[1] In deciding whether a defendant has advanced a substantial, fair, and just reason to withdraw a guilty plea, the district court must consider the totality of the circumstances to determine whether the defendant entered the plea voluntarily, knowingly, and intelligently.[2] The district court "has a duty to review the entire record to determine whether the plea was valid. . . . [and] may not simply review the plea canvass in a vacuum."[3] A defendant has no right, however, to withdraw his plea merely because he moves to do so prior to sentencing or because the State failed to establish actual prejudice.[4] Nevertheless, a more lenient standard applies to motions filed prior to sentencing than to motions filed after sentencing.[5]

An order denying a presentence motion to withdraw a guilty plea is reviewable on direct appeal from the judgment of conviction as an intermediate order in the proceedings.[6] "On appeal from the district court's determination, we will presume that the lower court correctly assess the validity of the plea, and we will not reverse the lower court's determination absent a clear showing of an abuse of discretion."[7] If the motion to withdraw is based on a claim that the guilty plea was not entered knowingly and intelligently, the burden to substantiate the claim remains with the appellant.[8]

Our review of the totality of the circumstances reveals that Hall entered his guilty plea voluntarily and knowingly. Although the record does not indicate that Hall was advised by the court that his offense was non-probationable, the written guilty plea, signed by Hall, reflects the parties stipulation to a sentence of 10 years to life.[9] In fact, the agreement states: "I understand that as a consequence of my plea of guilty the Court <u>must</u> sentence me to imprisonment in the Nevada State Prison for LIFE with the possibility of parole with parole eligibility after a minimum of ten (10) years." (Emphasis added.) Hall has never challenged the veracity of the stipulation.

Additionally, at the hearing on Hall's motion, the district court was informed that Hall, after an evaluation, was deemed competent prior to the entry of his plea, and then again by both a psychiatrist and a clinical psychologist after he expressed a desire to withdraw his guilty plea. Citing to the doctors' reports, the district court found that Hall failed to substantiate his claim that he was incompetent and that his guilty plea was not entered knowingly and intelligently. We agree and conclude that the district court did not abuse its discretion in denying Hall's presentence motion to withdraw his guilty plea.

---

[1] *Woods v. State*, 114 Nev. 468, 475, 958, P.2d 91, 95 (1998) (quoting *State v. District Court*, 85 Nev. 381, 385, 455 P.2d 923, 926 (1969); *see also*, NRS 176.165.

[2] *See Crawford v. State*, 117 Nev. 718, 721-22, 30 P.3d 1123, 1125-26 (2001).

[3] *Mitchell v. State*, 109 Nev. 137, 141, 848 P.2d 1060, 1062 (1993).

[4] *See Hubbard v. State*, 109 Nev. 110 Nev. 671 675-76, 877 P.2d 519, 521 (1994).

[5] *See Molina v. State*, 120 Nev. 185, 87 P.3d 533 (2004).

[6] NRS 177.045; *Hart v. State*, 116 Nev. 558, 562 n.2, 1 P.3d 969, 971 n.2 (2000) (citing *Hargrove v. State*, 100 Nev. 498, 502 n.3, 686 P.2d 222, 225 n.3 (1984)).

[7] *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986).

[8] *See id*. at 272, 721 P.2d at 368.

[9] *See generally Little v. Warden*, 117 Nev. 845, 851, 34 P.3d 540, 544 (2001) (holding that "[w]here it appears, in examining the totality of the circumstances, that a defendant knew that probation

>was not available at the time of the entry of the guilty plea, we will not vitiate an otherwise valid guilty plea").

ECF No. 21-7, p. 2-5.

Hall offers lengthy argument as to why his mental impairments made it impossible for him to enter a knowing, intelligent, and voluntary guilty plea. ECF No. 87, p. 8-15. The threshold question before the court, however, is whether this court must defer to the state court's denial of the claim under 28 U.S.C. § 2254(d). In this regard, Hall argues that the Nevada Supreme Court evaluated the lower court's decision for an abuse of discretion, but "did not assess whether [his] plea was knowingly, intelligently, and voluntarily entered." Id., p. 17. He further argues that neither Dr. Brown nor Dr. Glovinsky "never specifically opined whether [he] was competent to enter into the guilty plea agreement" and that the Nevada Supreme Court's finding of facts "ignores the details" of the doctors' reports. *Id*.

Arguably Hall is correct that neither doctor rendered a specific opinion as to his competence at the time of the guilty plea agreement and the plea hearing. On the other hand, neither expert found that Hall lacked the necessary competence at the relevant time. Dr. Glovinsky found Hall competent as of the date of his report on March 26, 2006, and nothing in the report supports a finding that Hall was less competent two months earlier when he entered into the plea agreement. ECF No. 21-24. Dr. Brown ultimately concluded that "[t]he issue [Hall] has raised regarding his mental state at the time of signing the papers is more related to dissatisfaction with the results than with lack of ability to understand." ECF No. 21-23, p. 4.

This court recognizes that the question whether a guilty plea is knowing and voluntary goes beyond a mere determination that the defendant was competent at the time of the plea. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993) ("In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary."). Here, however, the evidence before the Nevada Supreme Court when it adjudicated the claim was not sufficient to overcome the presumption that Hall made a

voluntary and intelligent choice to enter a guilty plea. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (limiting § 2254(d)(1) review to the state court record). In addition, the excerpt from the state supreme court's decision above belies Hall's argument that the state supreme court merely rubber-stamped the lower court's decision without independently assessing the validity of the guilty plea.

Notwithstanding any mental impairments Hall may have had at the time, his guilty plea nonetheless represents "a voluntary and intelligent choice among the alternative courses of action" available at the time. *Hill*, 474 U.S. at 56. In this regard, the record reflects that the State dismissed 15 additional counts of lewdness with a minor under the age of 14 in exchange for the plea. ECF No. 20-6. And, in addition to the testimony of the victim, the evidence the State intended to present at trial included incriminating statements Hall had made in telephone calls from jail and evidence that, in a fashion similar to the allegations in the present case, he had sexually abused a niece in Detroit in the 1980s. ECF Nos. 20-10; ECF No. 20-19, p. 5.

Likewise, the evidence before the Nevada Supreme Court did not demonstrate that Hall did not understand the consequences of entering his guilty plea or that his counsel unduly coerced him into pleading guilty. The Nevada Supreme Court correctly noted that the guilty plea agreement plainly indicated that, by virtue of the plea, Hall was subject to a mandatory life sentence with parole eligibility after a minimum of ten years and to lifetime supervision. ECF No. 20-13, p. 2-3. Hall confirmed in open court that he fully understood the plea agreement. ECF No. 20-12, p. 3-4. At the hearing on his motion to withdraw his plea, Hall claimed that he would not have agreed to such a sentence given that he had turned down an offer of two to 20 years. ECF No. 20-19. That offer was apparently made, however, prior to the preliminary hearing and before the State obtained recordings of Hall's incriminating phone conversations and a favorable ruling on its motion to admit evidence of prior sexual abuse. *Id.*, p. 4-5.

The only evidence before the Nevada Supreme Court that Hall was coerced by his attorney was a brief mention in a letter to his attorney of being "pushed in to it by

being told constantly to take the deal." ECF No. 20-14, p. 3. At the hearing on his motion to withdraw, Hall attributed his decision to hearing voices, but made no mention of undue pressure from his attorney. ECF No. 20-19, p. 4.

Thus, this court will defer to the Nevada Supreme Court's decision to deny Ground One having concluded that the decision was a reasonable application of clearly established Federal law and was based on a reasonable determination of the facts in light of the evidence presented in state court. Finally, the court has reviewed Hall's various arguments as to why *Pinholster* does not preclude this court from considering evidence not before the Nevada Supreme Court when it adjudicated his claim. ECF No. 87, p. 18-24. They are without merit.

**Ground Two**

In Ground Two, Hall alleges he was deprived of effective assistance of counsel in violation of his constitutional rights because his counsel failed to adequately investigate his case (Two(A)) and failed to apprise him of the direct consequences of his guilty plea (Two(B)).[2]

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show 1) that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) that it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a petitioner must show both that counsel's advice fell below an objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v.*

---

[2] An additional allegation of ineffective assistance of counsel due to counsel failure to obtain additional psychiatric and neuropsychological evaluations was dismissed as time-barred. ECF No. 76.

10

*Lockhart*, 474 U.S. 52, 58–59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel).

*1. Ground Two(A)*

Hall claims counsel was deficient because he did not delve into Hall's medical, psychiatric, and education records that would have revealed "Hall's low intellectual functioning, his cognitive impairments, his psychiatric illness and his physical limitations." ECF No. 47, p. 20. He further claims that counsel failed to investigate his claims of innocence which would have disclosed that the victim (his nephew) harbored ill will against him and had threatened to "get" him. *Id.* In addition, Hall contends that his counsel had a history of failing to investigate cases. *Id.*, p. 20-21.

In Hall's first state post-conviction proceeding, the Nevada Supreme Court correctly identified *Strickland*/*Hill* as the federal law governing Hall's ineffective assistance of counsel claims. ECF No. 21-20, p. 3. Included in the court's decision is the following:

> [A]ppellant claimed that trial counsel was ineffective for failing to investigate after appellant informed trial counsel that he was innocent. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant failed to set forth what facts or evidence trial counsel failed to discover with further investigation. Appellant received a substantial benefit by entry of his guilty plea. In exchange for his guilty plea to one count of lewdness with a child under the age of fourteen years, appellant avoided going to trial on an additional fifteen counts of lewdness with a child under the age of fourteen years. Thus, appellant failed to demonstrate that there was a reasonable probability that he would have insisted on going to trial. Therefore, we conclude that the district court did not err in denying this claim.

*Id.*, p. 3-4.

Hall argues the Nevada Supreme Court's decision is not entitled to deference under § 2254(d) because the court premised the decision on the fact that Hall received a "substantial benefit" by pleading guilty without assessing whether counsel had fulfilled his obligation to investigate Hall's case. ECF No. 87, p. 28-29. Be that as it may, Hall nonetheless fails to establish that counsel was ineffective under *Strickland*/*Hill* due to his alleged failure to investigate.

11

First, counsel did obtain a psychiatric evaluation of Hall prior to the entry of the guilty plea that includes much of the information Hall claims counsel failed to uncover. ECF No. 21-22. Second, Hall fails to substantiate his claim of innocence with any credible evidence, most notably evidence to support his allegation that his nephew had reason to fabricate the sexual abuse allegations. Lastly, counsel's alleged history of failing to investigate his cases has no bearing on whether he conducted an adequate investigation in this particular case. Given the strength of the evidence against him, as outlined above, Hall has not demonstrated that, but for counsel's alleged failure to investigate, he would have insisted on proceeding to trial.

### 2. Ground Two(B)

Hall contends that he assumed he was going to receive a sentence of two to 20 years (not ten to life) and that counsel did not discuss with him the lifetime supervision requirement and did not that notify him that he would not be eligible for probation. He further alleges that his mental and physical limitations prevented him from understanding the consequences of the plea.

The Nevada Supreme Court's decision in Hall's first state post-conviction proceeding states as follows:

> [A]ppellant claimed that trial counsel was ineffective for allowing the district court to impose lifetime supervision. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. The district court was required to impose the special sentence of lifetime supervision due to appellant's conviction of the offense of lewdness with a child.[4] Appellant was further informed of the penalty of lifetime supervision in the written guilty plea agreement, which appellant acknowledged reading, signing and understanding. Therefore, we conclude that the district court did not err in denying this claim.
>
> ———————————————
>
> [4] NRS 176.0931(1), (5)(c)(1).

*Id.*, p. 4.

The state court's decision was eminently reasonable. In addition to the guilty plea agreement, the transcript of the preliminary hearing conflicts with Hall's claim that counsel had not explained the lifetime supervision requirement to him. ECF No. 20-4, p.

2. And, for reasons discussed above and based on admissions he made to Dr. Glovinsky, Hall's claims that he assumed he had agreed a sentence of two to 20 years and that he was not aware he would not be eligible for probation also lack credibility. ECF No. 21-24, p. 3. In addition, notwithstanding his mental impairments, the letter Hall wrote to counsel promptly after entering his guilty plea stands as contemporaneous evidence that Hall was capable of understanding, and did understand, the consequences of his guilty plea. ECF No. 20-14, p. 3.

For the foregoing reasons, Hall is not entitled to habeas relief based on his claims that he received ineffective assistance of counsel.

**Ground Four**

In Ground Four, Hall claims that the application of lifetime supervision conditions to his sentence violates his rights to due process under the Fifth and Fourteenth Amendments of the Constitution. He alleges that the conditions were never explained to him, nor were they spelled out in the lifetime supervision statute. In addition, he contends the conditions violate due process because they impose new restrictions and requirements without an opportunity for a defendant to challenge them.

This claim is without merit. Whether a procedural due process violation has occurred requires a two-step inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted). Even if lifetime supervision conditions deprive him of a liberty interest, Hall was afforded "all the constitutionally required procedural safeguards" by virtue of being a convicted sex offender. *American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1059 (9th Cir. 2012).

In addition, an action under 42 U.S.C. § 1983, not a habeas proceeding, is the proper method for Hall to challenge particular conditions that may be imposed upon him under lifetime supervision. The "core of habeas corpus" is relief that "terminates

custody, accelerates the future date of release from custody, [or] reduces the level of custody." *Nettles v. Grounds*, 830 F.3d 922, 929-30 (9th Cir. 2016) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005) (Scalia J., concurring)). "[I]f a state prisoner's claim does not lie at 'the core of habeas corpus,' . . . it may not be brought in habeas corpus but must be brought, 'if at all,' under [42 U.S.C.] § 1983." Id. at 931 (citations omitted). Thus, to the extent Ground Four challenges the conditions imposed on him under lifetime supervision, it is not cognizable in a federal habeas proceeding.

IV. CONCLUSION

For the reasons set forth above, Hall is not entitled to habeas relief and his petition will be denied.

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Hall's petition, the court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Hall's habeas claims.

**IT IS THEREFORE ORDERED** that petitioner's second amended petition for writ of habeas corpus (ECF No. 47) is DENIED. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

DATED THIS  8  day of  January , 2018.

_____
UNITED STATES DISTRICT JUDGE